## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BOBBY WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action** |
| **v.** | ) | **No. 1:20-cv-05262-SEG-JEM** |
| | ) | |
| **NORFOLK SOUTHERN RAILWAY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**

*/s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 230-6727
Facsimile: (404) 525-6955
*dmcduffie@constangy.com*

**Counsel for Defendant**

# INTRODUCTION[1]

Norfolk Southern Railway Company ("Norfolk Southern") employed Plaintiff Bobby Walker as a Conductor from May 5, 2010 to June 26, 2018. Plaintiff was removed from the service of Norfolk Southern after excessively exceeding the speed limit on two separate occasions in 2015 and 2018. Plaintiff is now alleging race discrimination under 42 U.S.C. § 1981 because, according to Plaintiff, "[t]he discipline taken against Plaintiff differed from disciplinary actions taken against Caucasian Engineers and Conductors under similar circumstances." (Plaintiff's Complaint ("Compl."), Doc. 3, p. 12, ¶ 27). He is wrong. Norfolk Southern categorizes excessive speeding as a Major infraction, which can result in dismissal from service **on the first offense**. Indeed, in Georgia, where Plaintiff worked, from 2018 to 2020, both Caucasian and African American Conductors have been dismissed from service by Norfolk Southern after only a single excessive speeding violation. After Plaintiff was dismissed from service for excessive speeding in 2015, he appealed that decision to the Public Law Board ("PLB"), the final arbitrator of such disputes pursuant to the collective bargaining agreement governing his rights as a unionized employee. While the PLB gave Plaintiff a second chance and

---

[1] The facts detailed in this Introduction are set forth below in the Factual Background section of this Memorandum, which cites to Defendant's Statement of Undisputed Material Facts (hereinafter cited as "SOF(s) __"), filed contemporaneously herewith.

reinstated him, the PLB fully acknowledged in its written decision that it had found substantial evidence to support Plaintiff's dismissal. When Plaintiff appealed his second dismissal for excessive speeding, the PLB denied his appeal and acknowledged the appropriateness of his dismissal, given he had a second chance.

Norfolk Southern did not discriminate against Plaintiff on the basis of his race. The undisputed evidence shows that Plaintiff was guilty of excessive speeding and his dismissal from service was warranted. No genuine disputes regarding issues of material fact exist in this case. For these reasons, as discussed more fully below, Norfolk Southern requests that this Court grant its Motion for Summary Judgment.

## FACTUAL BACKGROUND[2]

Norfolk Southern hired Plaintiff as a Conductor Trainee on May 5, 2010. (SOF ¶ 9). That same day, Plaintiff signed a Safety Commitment Letter in which he agreed, among other things, to conduct himself in a safe manner at all times. (SOF ¶ 11). On October 6, 2010, Plaintiff was promoted to Conductor, and established Conductor seniority. (SOF ¶ 12). As a Conductor, Plaintiff's responsibilities included, among other things, overseeing the operation of the trains on which he was assigned, completing transport paperwork, and performing manual labor as needed.

---

[2] Additional undisputed material facts not set forth in the Factual Background section of this Memorandum will be included where appropriate in the Argument and Citations of Authority section of this Memorandum.

(SOF ¶ 10).

Beginning early in his career with Norfolk Southern, Plaintiff violated numerous safety rules. (SOF ¶ 13). Examples include the following:

- On November 20, 2010, Plaintiff caused a train derailment by failing to ensure that his route was properly aligned for movement. (SOF ¶ 14). Plaintiff waived his right to a formal hearing, accepted responsibility for his conduct and received a 30-day deferred suspension. (SOF ¶ 15).

- On September 22, 2012, Plaintiff violated Norfolk Southern's safety rule requiring employees to maintain a safe distance away from equipment while working; Plaintiff again waived his right to a formal hearing, accepted responsibility for his conduct and received a 10-day deferred suspension. (SOF ¶ 16).

Throughout his tenure with Norfolk Southern, Plaintiff continued to commit safety violations, including two incidents of excessive speeding, as discussed below.

Plaintiff's first offense of excessive speeding occurred on June 22, 2015, when Plaintiff was assigned as the Conductor on a train traveling from Atlanta, Georgia to Greenville, South Carolina. (SOF ¶¶ 17, 18). When the train received an approach signal, which mandated that the crew reduce the train's speed to 30 miles per hour in preparation to stop at the next signal, Plaintiff allowed the train to continue

3

traveling at a speed of 60 miles per hour. (SOF ¶ 18). As a result of the excessive speed, the train stopped 804 feet beyond the stop signal, which created a potentially dangerous situation because the train entered a track inspector's authority limits without permission. (SOF ¶¶ 18, 19). Plaintiff was charged with a Major violation,[3] and, during his formal hearing on July 7, 2015, Plaintiff accepted responsibility for his conduct and stated: "**I'm responsible for it. I man up to it…**" (SOF ¶ 22). Plaintiff was dismissed from the service of Norfolk Southern following the hearing, after which, pursuant to his union rights, he exercised his right of appeal, and, ultimately, the Public Law Board ("PLB") reinstated him *without back pay* on October 13, 2016—approximately 16 months after the incident.[4] (SOF ¶¶ 23-25).

---

[3] Excessive speeding, which is considered a Major violation under Norfolk Southern's System Teamwork and Responsibility Training ("START") disciplinary policy, is defined as a speed of 5 miles per hour or more over the maximum authorized speed limit. (SOF ¶ 21).

[4] As a railway operator, Norfolk Southern is subject to the Railway Labor Action ("RLA"), which governs labor relations in the railway and airline industries. 45 U.S.C. § 151 *et seq*. Plaintiff was an "agreement employee," which means he was among Norfolk Southern's employees who were represented by a union—specifically, in this instance, the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART"), which was formed on or around August 11, 2014 in a merger between United Transportation Union and the Sheet Metal Workers' International Association. (SOF ¶ 3). Under the collective bargaining agreement ("CBA") and Norfolk Southern's internal policies, agreement employees are subject to a progressive discipline policy, under which levels of offenses range from "Minor" to "Major," with "Major" offenses being those for which a single occurrence may warrant dismissal from the service of Norfolk Southern. (SOF ¶ 8). Agreement employees are entitled to a formal hearing to determine their

The PLB found substantial evidence supporting the excessive speeding charge against Plaintiff, but the PLB decided to give Plaintiff another opportunity to demonstrate that he could work in compliance with all safety and operating rules. (SOF ¶ 24).

Less than two years later, on June 26, 2018, Plaintiff committed a second offense of excessive speeding. (SOF ¶¶ 26-29). That day, Plaintiff was again assigned as a Conductor on a train traveling from Atlanta, Georgia to Greenville, South Carolina. (SOF ¶ 26). The engineer on that train was Justin Herren. (Id.). In Chamblee, Georgia, the train picked up a high and wide load, which mandated that the train's speed had to be limited to 45 miles per hour. (SOF ¶ 27). The train was equipped with an automatic train protection system, Positive Train Control ("PTC"), which is designed to monitor trains to ensure they maintain safe speeds, and to stop them when they exceed safe speeds. (SOF ¶ 28). The PTC system stopped the train when it reached the speed of 55 miles per hour—10 miles above the maximum speed limit. (SOF ¶ 29).

On July 24, 2018, Plaintiff and Herren attended a formal hearing to determine their responsibility and discipline for the June 26, 2018 excessive speeding charge,

---

responsibility, if any, in connection with any incident or alleged offense; thereafter, they are permitted to appeal the hearing decision within Norfolk Southern, after which, they may appeal Norfolk Southern's decision to a PLB. (SOF ¶ 5).

and Steve Dutton, a Road Manager at Norfolk Southern, served as the Charging Officer. (SOF ¶ 30). Both Plaintiff and Herren were suspended from the service of Norfolk Southern, pending the formal hearing. (SOF ¶ 31). During the hearing, it was determined that Plaintiff did not try to reduce the train's speed, even though he knew that the train was hauling a high and wide load, which restricted the maximum speed to 45 miles per hour. (SOF ¶ 33). Under Norfolk Southern's operating procedures, the Conductor and Engineer are jointly and equally responsible for the safety of the train and for observance of all rules. (SOF ¶ 34). If the Engineer fails to properly control the train's movement, then the Conductor must communicate that failure to the Engineer. (SOF ¶ 35). Ultimately, if the Engineer does not control the train's movement, the Conductor must take action to stop the train. (Id.).

Near the conclusion of the hearing, Plaintiff made the following statement:

> Well, I regret that it happened. I should have been a little bit more aware of certain things. I'm sorry that it happened. If given another opportunity, my thing is, if we get any Engineer, whoever it is, anything over 2 miles an hour, it's going to be pulled. But we're human. We make mistakes. I'm not going to sit up here and justify anything. It happens. Just got to be a little bit more aware of certain things. And I'm sorry we got put in this situation. I hope that it will turn out better next time.

(SOF ¶ 36). In short, Plaintiff admitted culpability for the excessive speeding offense. (Id.).

Following the hearing, both Plaintiff and Herren were found guilty of

excessive speeding and were dismissed from the service of Norfolk Southern. (SOF ¶ 32). Plaintiff appealed the decision within Norfolk Southern, which denied the appeal. (SOF ¶ 37). Herren, on the other hand, withdrew his appeal and, instead, resigned. (Id.). Had he chosen to do so, Plaintiff also could have resigned rather than pursue his right of appeal.[5] (Id.). After Norfolk Southern denied Plaintiff's appeal, Plaintiff appealed his dismissal to the PLB, which also denied his appeal, relying, in part, on the fact that Plaintiff's "record shows that approximately two years [prior to the June 26, 2018 excessive speeding incident], a [PLB] reinstated the claimant to service without back pay" for the prior excessive speeding discussed above. (SOF ¶ 39). In other words, the PLB concluded that Plaintiff had already been given a second chance, and he failed to demonstrate that he could comply with Norfolk Southern's safety and operating rules. (Id.).

In his Complaint, Plaintiff alleges that Herren "tested positive on his drug test taken on June 26, 2018" and "had been offered to enroll in a drug rehabilitation program provided by the Defendant." (Compl., Doc. 3, p. 8).[6] This is a red herring

---

[5] During his deposition, Plaintiff testified that he was not allowed to resign, but he offered no basis for that belief. (SOF ¶ 38).

[6] Norfolk Southern will not disclose Herren's drug test results herein, because Herren has expressly declined to grant permission for the disclosure of such information. During Herren's deposition, Plaintiff asked Herren if he will give permission for Norfolk Southern to disclose information relating to his drug test on June 26, 2018. (SOF ¶ 40). Herren responded: "No." (Id.). Thereafter, on the record

and is irrelevant to the question of whether Norfolk Southern treated Plaintiff fairly.

Norfolk Southern's Drug and Alcohol Rehabilitation Services ("DARS") Program

is designed to help its employees with drug and alcohol problems and is available to

all employees, subject to eligibility requirements. (SOF ¶ 41). But, entry into the

DARS Program does not absolve an employee of responsibility for rules violations

such as excessive speeding.[7] (SOF ¶ 42). Thus, the question of whether Herren had

an opportunity to participate in the DARS program had nothing whatsoever to do

with **Herren's or Plaintiff's** culpability for excessive speeding. Again, **both**

**Herren and Plaintiff** were dismissed from the service of Norfolk Southern

following a formal hearing in which they were found guilty of excessive speeding.

(SOF ¶ 32). The only difference in how Plaintiff was treated by Norfolk Southern

---

during the deposition, Plaintiff agreed that he would no longer pursue any
information from Norfolk Southern relating to the results of Herren's drug test on
June 26, 2018, in light of Herren's refusal to grant permission for the disclosure of
such information. (Id.).

[7] Norfolk Southern's Safety and General Conduct Rules provides that an employee
who reports for duty under the influence of alcohol or a Prohibited Drug (as defined
by Company Policy on Alcohol and Drugs), or a derivative or combination of any
of these, or who uses any of the foregoing while on duty, is subject to dismissal from
the service of Norfolk Southern. (SOF ¶ 43). An employee whose urine tests positive
for a Prohibited Drug is eligible to participate in the DARS Program. (SOF ¶ 44).
Under certain circumstances, if such an employee completes the requirements of the
DARS Program, he or she may be eligible for return to service, despite the
employee's dismissal from service for violating Company Policy on Alcohol and
Drugs, specifically, Rule G. (SOF ¶ 45).

was based on Plaintiff's own decisions, because Herren resigned following the hearing, while Plaintiff pursued his right of appeal following the hearing. (SOF ¶ 37). Again, had he chosen to do so, Plaintiff also could have resigned, rather than pursue his right of appeal. (Id.).

Plaintiff's race played no role at any stage of Plaintiff's disciplinary process. (SOF ¶ 54). Norfolk Southern is an equal employment opportunity employer, and its "employees are hired, trained, paid, assigned, **disciplined**, and promoted based on qualifications and performance, regardless of race, religion, color, national origin, gender, age, status as a covered veteran, sexual orientation, gender identity, the presence of a disability, genetic information, or any other legally protected status not related to a person's ability to do a job." (SOF ¶ 1 (emphasis added)). Obviously, Norfolk Southern considers it critically important for Conductors and Engineers to comply with speed limits while operating trains on the railway. (SOF ¶ 47). In fact, from 2018 through 2020, any Conductor or Engineer in Georgia (where Plaintiff worked) who received two charges of excessive speeding on separate occasions during that time period were dismissed from the service of Norfolk Southern. (SOF ¶ 48). Also, during this same time period, both Caucasian and African American Engineers and Conductors in Georgia were dismissed from the service of Norfolk Southern **after receiving only one charge of excessive speeding**. (SOF ¶ 49). No

Conductor or Engineer in Georgia—either Caucasian or African American—who committed an excessive speeding violation and had a disciplinary record similar to Plaintiff's disciplinary record, was treated more favorably than Plaintiff. (SOF ¶ 50).

In sum, Plaintiff's conduct warranted dismissal of service from Norfolk Southern, that decision was affirmed on appeal by the PLB, and Plaintiff was provided all the rights to which he was entitled under the rules and regulations governing his status as an agreement employee. (SOF ¶¶ 32, 33, 39, 54).

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Once the moving party has met its initial burden, the nonmoving party must identify the specific facts that show a genuine issue for trial. Celotex, 477 U.S. at 323-24. "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). Although evidence from the non-movant is taken as true, and justifiable inferences are drawn in his favor, inferences based on speculation and conjecture will not defeat a motion for summary judgment. Hammett v. Paulding Cty., 875 F.3d 1036, 1048 (11th Cir. 2017). The nonmoving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. Anderson, 477 U.S. at 324 (internal quotation marks and citation omitted).

## II.    PLAINTIFF'S SECTION 1981 CLAIM

Plaintiff has brought his race discrimination claim under 42 U.S.C. § 1981, which guarantees all persons with equal rights to make and enforce contracts. Plaintiff alleges that, because he is African American, Norfolk Southern did not treat him the same as Herren, a Caucasian employee when both Plaintiff and Herren committed the same offense of excessive speeding. (Compl., Doc. 3, p. 9). Specifically, Plaintiff alleges that Herren was given the opportunity to participate in a drug rehabilitation program and was allowed to resign his employment with Norfolk Southern, while Plaintiff was terminated from his employment for committing the same offense. (Id.). Plaintiff's allegations are unsupported by the undisputed material facts set forth above and, thus, fail as a matter of law.

11

To prevail on a claim of race discrimination in a §1981 claim, Plaintiff must prove that race was the "but for" cause of the alleged adverse action. Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S.Ct. 1009 (2020). If, however, Norfolk Southern can show that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment, then Plaintiff's §1981 claim fails. Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248 (1981). As shown above, Norfolk Southern had a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff was found culpable for excessive speeding while serving as a Conductor on June 26, 2018—less than two years after returning to service on October 13, 2016, after having been found culpable for excessive speeding during a prior incident on June 22, 2015. (SOF ¶¶ 17-25, 32).

## III.    STANDARD FOR EVALUATING DISCRIMINATION AND RETALIATION CLAIMS

### a.    Plaintiff cannot establish a *prima facie* case of discrimination under Section 1981.

Because Plaintiff does not have any direct evidence of race discrimination, Plaintiff must prove his *prima facie* case of race discrimination using the McDonnell-Douglas burden-shifting analysis. [8] See Ziyadat v. Diamondrock

---

[8] "Courts use the same framework for analyzing claims under both" Title VII and Section 1981. Lewis v. The Medical Center, Inc., Case No. 4:21-CV-72 (CDL), 2022 WL 16541165, *7 (M.D. Ga. Oct. 28, 2022)(applying the McDonnell Douglas

Hospitality Company, 3 F.4th 1291, 1296 (11th Cir. 2021) ("A 1981 plaintiff seeking to prove racial discrimination by circumstantial evidence may proceed under the McDonnell-Douglas burden-shifting framework") (citations omitted).

Under the McDonnell-Douglas burden-shifting framework, Plaintiff first has the burden of establishing a *prima facie* case. If he meets this burden, the burden then shifts to Norfolk Southern to articulate a legitimate, non-discriminatory reason for its actions. Norfolk Southern's burden is "exceedingly light". Meeks v. Computer Associates Intern., 15 F.3d 1013, 1019 (11th Cir. 1994). If Norfolk Southern successfully articulates such a reason, the presumption of unlawful conduct "drops from the case." Burdine, 450 U.S. at 255-56. Plaintiff's claims then fail unless he can demonstrate by a preponderance of the evidence that the reason proffered was not the real basis for the decision but a pretext for discrimination. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).

For Plaintiff to establish a *prima facie* case of race discrimination, he must show (1) he belongs to a racial minority; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside of his classification more favorably; and (4) he was qualified to do the job. Holifield v.

---

burden-shifting framework to a Section 1981 claim based on circumstantial evidence).

Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Here, Plaintiff cannot prove element

three of a *prima facie* case of discrimination.

Under element three, Plaintiff must present comparators of a different race

who were "similarly situated in all material respects" and were not subject to the

same mistreatment. Ziyadat, 3 F.4th at 1296 (citation omitted). In the employment

context, this means that the comparators must have engaged in the same basic

conduct or misconduct, been subject to the same policy, worked under the same

supervisor, and had similar work experience and disciplinary history. Lewis v. City

of Union City, Georgia, 918 F. 3d 1213, 1227 – 29 (11th Cir. 2019) (en banc).

Plaintiff has not—and cannot— come forward with any proper comparator, because

none exists.

The gist of Plaintiff's discrimination claim is that Herren, a Caucasian

Engineer, was treated more favorably than Plaintiff, an African American

Conductor, because Herren was given the opportunity to participate in a drug

rehabilitation program and was allowed to resign his employment with Norfolk

Southern, even though Herren and Plaintiff were charged with the same offense of

excessive speeding. (Compl., Doc. 3, p. 9). However, Herren is not an appropriate

comparator, because Herren's disciplinary history does not come close to being

similar to Plaintiff's disciplinary history. Specifically, unlike Plaintiff, Herren did

not have a prior dismissal (and reinstatement) for the offense of excessive speeding. (SOF ¶ 51). Therefore, Herren is not a proper comparator.

Moreover, even assuming Herren is a proper comparator—and he is not—Herren was not treated more favorably than Plaintiff. The question of whether Herren tested positive for a Prohibited Substance and had the opportunity to enter into Norfolk Southern's DARS Program[9] is a red herring, as **both Herren and Plaintiff were dismissed from the service of Norfolk Southern**, subject to any appeals they chose to pursue. (SOF ¶ 32). The only difference in how Herren and Plaintiff were treated by Norfolk Southern was based on Plaintiff's own decisions, as Herren resigned following the formal hearing held on their excessive speeding charges, while Plaintiff pursued his right of appeal following the hearing. (SOF ¶ 37). Under these circumstances, it cannot be said that Herren was treated more favorably than Plaintiff.

During his deposition, Plaintiff identified other individuals whom he believes were treated more favorably than Plaintiff, Caucasian Engineers Wendall Dillingham and John Mason,[10] but Plaintiff failed to provide any evidence that they

---

[9] Again, for the reasons discussed above, Norfolk Southern will not disclose Herren's drug test results or whether he was eligible to participate in the DARS Program.

[10] Plaintiff appears to be referring to John Mason, as there is no Caucasian Engineer in Georgia named John Manson.

are proper comparators. (SOF ¶ 52). Instead, Plaintiff's understanding of these Norfolk Southern employees' disciplinary record is based on rank hearsay. (Id.). (Plaintiff discussing secondhand information he was told about Dillingham and Mason by other employees whose identities Plaintiff could not recall). In any event, Dillingham and Mason are not proper comparators, because, unlike Plaintiff, neither Dillingham nor Mason committed multiple offenses of excessive speeding.[11] (SOF ¶ 53).

Because Plaintiff has failed to provide evidence that Norfolk Southern has treated any individual outside of Plaintiff's protected class more favorably than him, Plaintiff cannot establish a *prima facie* case of race discrimination under 42 U.S.C. §1981. Accordingly, Plaintiff's claim fails.

### b.   Defendant had a legitimate, non-discriminatory reason to terminate Plaintiff's employment.

Assuming *arguendo* that Plaintiff can meet his *prima facie* burden of race discrimination—which he cannot—Norfolk Southern can avoid a finding of discrimination by demonstrating a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Burdine, 450 U.S. at 248. Here, the overwhelming weight of the evidence demonstrates that Norfolk Southern had a

---

[11] Plaintiff has also failed to provide any evidence that Dillingham and/or Mason satisfy any other Lewis factors.

legitimate, non-discriminatory reason to terminate Plaintiff's employment. Thus, Plaintiff's claim fails.

As discussed above, Norfolk Southern dismissed Plaintiff from the service of Norfolk Southern because he was found guilty of excessive speeding on June 26, 2018. (SOF ¶ 32). Importantly, this was not the first time Plaintiff was found guilty of excessive speeding, as Norfolk Southern previously dismissed Plaintiff from service following an excessive speeding incident on June 22, 2015. (SOF ¶¶ 17-25). Ultimately, a PLB returned Plaintiff to service on October 13, 2016 *without back pay*, but the PLB stated that it was doing so to allow Plaintiff another opportunity to demonstrate that he could comply with all of Norfolk Southern's safety rules. (SOF ¶ 24). Nevertheless, less than two years later, Plaintiff committed another excessive speeding violation. (SOF ¶¶ 26-32). This time, however, the PLB did not reinstate Plaintiff to service, relying, in part, on the fact that Plaintiff had already been given a second chance. (SOF ¶ 39). Accordingly, the record evidence is abundantly clear that Norfolk Southern had a legitimate, non-discriminatory reason to terminate Plaintiff's employment.

### c. Plaintiff has not—and cannot—establish pretext.

Once an employer has met its burden of articulating a legitimate, nondiscriminatory reason for the employment action, the employee's *prima facie*

case is rebutted and the employee, who retains the burden of persuasion throughout, must then "show by a preponderance of the evidence that the Defendant's legitimate reasons were not the reasons that actually motivated its conduct, that the reasons were merely a 'pretext for discrimination.'" MacPherson v. University of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991); Carter v. City of Miami, 870 F2d 578, 584 (11th Cir. 1989) (in order to avoid a directed verdict for the employer once it produces evidence of a legitimate, nondiscriminatory reason, the plaintiff must present "significantly probative" evidence of a pretext). "If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the Defendant's proffered reasons is pretextual, the Defendant is entitled to summary judgment." Wascura v. City of S. Miami, 257 F.3d 1238, 1243 (11th Cir. 2001). Historically, courts refuse to second-guess business decisions of employers, as courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that decision." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Plaintiff has not—and cannot—come forward with any admissible evidence

establishing that Norfolk Southern's decision to terminate his employment was pretextual. As shown above, Norfolk Southern provided Plaintiff with all the rights to which he was entitled as an agreement employee, from a formal hearing to a right of appeal within Norfolk Southern and, ultimately, an appeal to a PLB. (SOF ¶ 54). Moreover, Plaintiff does not—and cannot—dispute his culpability for excessive speeding. Indeed, Plaintiff admitted his lack of awareness on the job during his hearing: "Well, I regret that it happened. I should have been a little bit **more aware** of certain things. I'm sorry that it happened." (SOF ¶ 36). As such, Plaintiff cannot show that Norfolk Southern's legitimate, nondiscriminatory reason for terminating Plaintiff's employment was pretextual. Therefore, Plaintiff's claim fails.

## IV.   LACK OF SUBJECT MATTER JURISDICTION

This Court lacks subject matter jurisdiction over Plaintiff's claim relating to his dismissal from the service of Norfolk Southern because the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., requires compulsory and binding arbitration of Plaintiff's claim before the National Railway Adjustment Board ("NRAB") or Public Law Boards ("PLB"), and a PLB has already denied Plaintiff's appeal.

The relationship between Norfolk Southern and its agreement employees, including Plaintiff, is governed by collective bargaining agreements ("CBAs") negotiated pursuant to the RLA. The RLA was enacted "to promote stability in labor-

management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (citations omitted). To this end, the RLA created the NRAB and authorized the establishment of PLBs to resolve "disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a. These disputes, known as "minor disputes," under the RLA, are subject to compulsory and binding arbitration before the NRAB or a PLB. 45 U.S.C. § 153 First (i); see also Conrail v. Ry. Labor Execs.' Assn., 491 U.S. 299, 303 – 04 (1989) ("The Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction over minor disputes. Judicial review of the arbitral decision is limited."); Everette v. Union Pac. R.R., 2006 WL 2587927, *3 (N.D. Ill. Sept. 5, 2006). An adjustment board created under the RLA has exclusive jurisdiction over minor disputes, and such disputes "must be resolved only through the RLA mechanisms." Hawaiian Airlines, 512 U.S. at 253; see also Evans v. Central of Georgia R. Co., 619 F.Supp. 1364, 1370 (N.D. Ga. 1985); Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. ABX Air, Inc., 274 F.3d 1023, 1028 (6th Cir. 2001); CSX Transp., Inc. v. Marquar, 980 F.2d 359, 361 (6th Cir. 1992). A party may challenge an award to a federal court, however, the court has very limited grounds on which an award may be overturned. 45 U.S.C. § 153 First (q) ("the order of a

division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order").

The use of the term "minor" does not mean that the infraction was not serious. Instead, "[a] plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the plaintiff's claim requires interpretation of the CBA." Everette, 2006 WL 2587927 at *4 (quoting Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 658 (7th Cir. 2001)); accord Dotson v. Norfolk S. Ry. Co., 52 Fed. Appx. 665, 657 (6th Cir. 2002). "A minor dispute relates to the meaning or proper application of a particular provision of a [CBA]…it seeks the recognition of rights claimed to have vested or accrued." Evans, 619 F.Supp. at 1368. This includes interpretation not only of the text of the CBA, but also practices and procedures that are part of the employment relationship. Lee v. Union Pac. R.R., 2004 WL 2937385 *3 (N.D. Ill. May 24, 2004); Conrail, 491 U.S. 299 at 311-312 (noting that CBA includes implied terms arising from "practice, usage and custom"). In deciding whether a minor dispute exists, "it is irrelevant whether the legal basis for the claim derives from a source other than

the collective bargaining agreement. The question is whether the claim requires the interpretation and application of the [CBA]." Caldwell v. Norfolk S. Corp., 1998 WL 1978291, *3 (W.D.N.C. Mar. 3, 1998) (citations omitted); accord Monroe v. Missouri Pac. R., 115 F.3d 514, 519 (7th Cir. 1997).

Here, Plaintiff's right to a disciplinary hearing was derived from the CBA between his union and Norfolk Southern. (SOF ¶ 3). The question of whether the hearing was fair and impartial is indistinguishable from asking whether the hearing was conducted in accordance with the dictates of the CBA and the practices thereunder. The employees of private sector employers, including railroads, do not have a legal right to any "due process" type hearing prior to termination. Plaintiff's right to a fair and impartial hearing is based solely on the CBA. (Id.). Over many decades, labor arbitrators, acting pursuant to the authority granted by Section 3 of the RLA, have developed a body of arbitral case law that interprets and applies those contractual requirements and past practices. This arbitral case law and the past practice of the parties in applying pre-termination procedures is critically important in determining whether a railroad has complied with its contractual obligations. Any dispute concerning a railroad's compliance with those contractual requirements must be decided through the same arbitral process that developed this body of case law, and any effort to enmesh this Court in the nuances of the proper application of CBAs

is improper.

Pursuant to the RLA, this Court lacks jurisdiction to interpret and apply the CBA to decide whether the hearing was conducted in accordance with the CBA. See Kozy v. Wings West Airline, Inc., 1995 WL 32915, at *3 (N.D. Cal. 1995) (finding claim that grievance hearing was conducted in unfair manner to be a minor dispute and preempted by RLA); see also United Transp. Union v. Southeastern Pa. Transp. Auth., 23 F. Supp. 2d 557, 559-60 (E.D. Pa. 1998) (finding claim disciplinary process was inappropriate because plaintiff was not permitted to have union representative as advocate to be minor dispute and preempted by RLA). As questions of the fairness of the disciplinary hearing are preempted and not properly before this tribunal, it necessarily follows that this Court lacks subject matter jurisdiction over this claim and, thus, should grant Norfolk Southern's motion for summary judgment.

Furthermore, Plaintiff sought review of his termination through a PLB, but the PLB determined that Plaintiff's employment was terminated in a fair and proper manner and refused to accept Plaintiff's appeal. (SOF ¶ 39). Therefore, under the authority of the tribunal charged with adjudicating Plaintiff's claim, Plaintiff's claim fails.

## **CONCLUSION**

For the foregoing reasons, Norfolk Southern respectfully submits that summary judgment should be granted in its favor, and Plaintiff's lawsuit should be dismissed as a matter of law.

Respectfully submitted this 9th day of March, 2023.

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*/s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 230-6727
Facsimile: (404) 525-6955
*dmcduffie@constangy.com*

**Counsel for Defendant**

24

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Respectfully submitted, this 9th day of March, 2023.

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*/s/ Darrick L. McDuffie*
Darrick L. McDuffie
Georgia Bar No. 490248
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 230-6727
Facsimile: (404) 525-6955
*dmcduffie@constangy.com*

**Counsel for Defendant**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **BOBBY WALKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action** |
| **v.** | ) **No. 1:20-cv-05262-SEG-JEM** |
| | ) |
| **NORFOLK SOUTHERN RAILWAY** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 9, 2023, I served a copy of ***Brief in Support of***

***Defendant's Motion for Summary Judgment*** on Plaintiff via electronic and U.S.

Mail, properly addressed to counsel for Plaintiff as follows:

Bobby Walker / *hardwork4000@aol.com*
22 Phillips Street
Newnan, Georgia 30263

**CONSTANGY, BROOKS, SMITH**
**& PROPHETE, LLP**

<u>*/s/ Darrick L. McDuffie*</u>
Darrick L. McDuffie
Georgia Bar No. 490248
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303-1557
Telephone: (404) 230-6727
Facsimile: (404) 525-6955

*dmcduffie@constangy.com*

1